| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:12-cr-00163-JAW |
| DARLENE FORD | ) | |

**ORDER ON MOTION IN LIMINE**

In 2004, James F. Ford and Darlene Ford were living as husband and wife in Wakefield, Massachusetts, when the police executed a search warrant of their premises. The search included both their residence and a home across the street to which they had access and revealed a substantial marijuana grow operation. Mr. Ford, but not Ms. Ford, was charged and convicted of a state felony, possession of marijuana with the intent to distribute. Ms. Ford now faces federal charges in the District of Maine for engaging in a conspiracy with her husband to manufacture marijuana, maintaining a drug-involved place, and aiding and abetting Mr. Ford's unlawful possession of a firearm. She seeks to obtain a pretrial ruling forbidding the Government from admitting evidence of the events in Massachusetts in 2004. Because evidence of the events in 2004 is relevant to her knowledge of her husband's prohibited status for purposes of the firearms charge, the Court concludes that the evidence is admissible on the firearms charge. Because evidence of her involvement with the marijuana grow operation has special relevance to the drug charges and because its probative value is not outweighed by unfair prejudice, the evidence is admissible under Federal Rule of Evidence 404(b), subject to a

limiting instruction. The Court denies the Defendant's motion in limine seeking exclusion.

## I.    STATEMENT OF FACTS

With trial scheduled to start on Tuesday, February 4, 2014, Darlene Ford filed a motion in limine on Friday, January 31, 2014, to exclude evidence of co-defendant James F. Ford's conduct leading to his 2004 commonwealth of Massachusetts conviction for possession of marijuana with the intent to distribute. *Def.'s Mot. in Limine* (ECF No. 301) (*Def.'s Mot.*). The Government responded on Monday, February 3, 2014. *Gov't's Resp. in Opp'n to Def.'s Mot. in Limine* (ECF No. 306) (*Gov't's Opp'n*).

Darlene Ford stands charged with three federal felonies: (1) conspiring with others, including James F. Ford, her husband, to manufacture 100 or more marijuana plants; (2) maintaining a drug involved premises in Monroe, Maine; and (3) aiding and abetting James F. Ford's illegal possession of a firearm.[1] *Superseding Indictment* (ECF No. 80). Mr. Ford's prohibited status arises from a 2004 Massachusetts felony conviction for the possession of marijuana with the intent to distribute. *Id.* at 4; *Jury Verdict Form* at 2 (ECF No. 250).

This is the second jury trial for Ms. Ford on these charges. In September 2013, on the third day of trial, the jury deadlocked and the Court declared a mistrial. *Order* (ECF No. 208). At the prior trial, the Government called as a

---

[1]    James F. Ford was also charged in the same indictment with four counts: (1) conspiracy to manufacture marijuana; (2) manufacture of marijuana; (3) maintaining a drug involved premises; and (4) being a felon in possession of a firearm. *Superseding Indictment* (ECF No. 80). On November 21, 2013, a federal jury convicted Mr. Ford of each charged crime. *Verdict Form* (ECF No. 250).

witness James Bruce, a Massachusetts state trooper, who investigated the circumstances surrounding the 2004 conviction. *Partial Tr. of Proceedings* at 117, 126-36 (ECF No. 226) (*Bruce Test.*). Trooper Bruce testified that on October 11, 2002, he participated in the execution of a search warrant for 2 Fellsmere Avenue, Wakefield, Massachusetts. *Id.* 126:6-17. He said that he arrived at the residence and knocked on the door, but no one answered. *Id.* Through his previous investigation, he was aware that the house across the street at 5 Fellsmere Avenue was also associated with the operation at 2 Fellsmere; he went across the street and knocked on the door at 5 Fellsmere. *Id.* 126:18-21. After there was no answer at 5 Fellsmere, he returned to 2 Fellsmere and, using a battering ram, made a forced entry into 2 Fellsmere. *Id.* 126:22-24. The house at 2 Fellsmere was not inhabited. *Id.* 127:1-2. However, inside 2 Fellsmere, there was a strong odor of marijuana, but he could not enter the second floor of the house because a locked grate blocked access. *Id.* 127:3-7.

While pondering how to get beyond the locked grate, Trooper Bruce noticed that the Defendant and her husband had pulled into the driveway at 5 Fellsmere. *Id.* 127:10-14. Mr. Ford came over the 2 Fellsmere and unlocked the grate. *Id.* 127:17-22. Once on the second floor, Trooper Bruce discovered an extensive marijuana grow operation, consisting of over 100 plants in three different rooms complete with grow lamps, periodicals on how to grow marijuana, a digital scale and similar items. *Id.* 127:23-128:6.

After completing the search of 2 Fellsmere, Trooper Bruce went across the road to 5 Fellsmere, but the Fords had left. *Id.* 128:20-24. Trooper Bruce noticed the odor of marijuana coming from 5 Fellsmere and went inside. *Id.* 128:24-129:1-3. Although he was able to enter the second floor at 5 Fellsmere, he found his way to a second story bedroom blocked by a locked grate similar to the one at 2 Fellsmere. *Id.* 129:1-8. Within another ungated bedroom, Trooper Bruce said he found maybe two dozen marijuana plants. *Id.* 129:9-12. The Trooper was ultimately able to gain access to the gated bedroom and found a butcher-block table consistent with use for marijuana preparation. *Id.* 129:14-21. Inside this room was a stairway that led to a third floor, where there were two more rooms of growing marijuana plants, complete with a filtration system and heat lamps. *Id.* 129:22-130-1. Trooper Bruce said that the bedroom at 5 Fellsmere across from the barricaded door was James and Darlene's bedroom. *Id.* 130:11-24.

## II.    THE PARTIES' POSITIONS

### A.    Darlene Ford's Motion

Darlene Ford acknowledges that evidence of James F. Ford's 2004 felony conviction is admissible at trial, but she objects to evidence of the facts underlying the conviction. *Def.'s Mot.* at 1. Ms. Ford contends that this evidence would be admissible only under Rule of Evidence 404(b) and, citing *Huddleston v. United States*, 485 U.S. 681 (1988), Ms. Ford objects to allowing the Government to "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Id.*

at 689.  Ms. Ford maintains that there is no evidence that she knew about Mr. Ford's status as a felon or his interest in growing marijuana.  *Def.'s Mot.* at 3.  She is worried that the jury will use Trooper Bruce's evidence to conclude that Ms. Ford is a bad person or that she has criminal propensities.  *Id.* at 3-4.

### B.     The Government's Response

In its response, the Government disagrees that Trooper Bruce's testimony about the 2004 search would be admissible only under Rule of Evidence 404(b).  *Gov't's Opp'n* at 1-2.  The Government points out that it is required to prove to the jury that Ms. Ford knew that her husband had been previously convicted of a felony.  *Id.* at 2.  The Government argues that evidence of the extensive nature of the 2004 grow operation is probative evidence from which a jury could infer that Ms. Ford knew that her husband was later convicted of the Massachusetts marijuana felony.  *Id.*

The Government also contends that Trooper Bruce's testimony is admissible under Rule 404(b) to prove Ms. Ford's knowledge, intent and absence of mistake or accident with regard to the conspiracy and drug premises charges.  *Id.* at 2-3.  The Government says that this evidence is particularly relevant to Count III, the drug premises count, because it includes a "willful blindness" scienter element.  *Id.* at 4.

## III.     DISCUSSION

### A.     The Firearms Charge

In order to prove that Darlene Ford aided and abetted the possession of a firearm by a felon, namely her husband, James F. Ford, the Government must

prove that Ms. Ford knew that James F. Ford had been convicted of a felony.[2] *United States v. Gardner*, 488 F.3d 700, 716 (6th Cir. 2007). To prove that Ms. Ford knew her husband was a felon, the Government intends to produce evidence: (1) that Ms. Ford was married to James F. Ford; (2) that they were living together; (3) that there was a significant marijuana grow at their home in Wakefield, Massachusetts in 2004; (4) that there was a significant marijuana grow in the home to which her husband had access across the street from their home in Wakefield; (5) that Ms. Ford drove in the driveway of their home while the police were searching the home across the street; (6) that Mr. Ford was charged with the Massachusetts felony of cultivating marijuana; and (7) that he was convicted of that charge. These facts, including the nature and extent of the marijuana grow in Wakefield, Massachusetts in 2004 would go directly to whether Ms. Ford had knowledge that her husband was a convicted felon. On the firearms charge, therefore, this evidence is not evidence of other crimes or bad acts under Rule 404(b) on the part of Ms. Ford. It is instead direct evidence that goes to her knowledge of his prohibited status. On this issue, it clearly meets the Rule 403 standard for admissibility because its probative value of her knowledge of his felony status is not "substantially outweighed by a danger of . . . unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

---

[2]     "With regard to aiding and abetting a felon in possession of a firearm, there is a circuit split as to whether the aider and abettor must know or should have known that the principal was a convicted felon." *United States v. Ecklin*, 837 F. Supp. 2d 589, 592 (E.D. Va. 2011) (discussing cases). Here, the Government concedes that it must prove that Ms. Ford knew or had reason to know that James F. Ford was a convicted felon. *Gov't's Req. Jury Instrucs.* at 11-12 (ECF No. 276).

## B.     The Marijuana Charges

Evidence of the facts underlying the 2004 marijuana charge against James F. Ford is admissible in the drug charges against Darlene Ford under Federal Rule of Evidence 404(b).  Ms. Ford was not charged with any crime in 2004, but according to Trooper Bruce's testimony, she was living in a house where marijuana was being grown.  This testimony, if believed by the jury, would be evidence of Ms. Ford's commission of a prior bad or criminal act, not probative of her bad character or propensity to commit the charged crimes, but admissible to prove her knowledge, intent, preparation, plan, and absence of mistake.

Federal Rule of Evidence 404(b) requires that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  The First Circuit directs that courts engage in a two-step process when evaluating evidence of prior acts under Rule 404(b).  *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000).  "First, the evidence must have 'special relevance' to an issue in the case such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain.'"  *Id.* (quoting *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)).  "Second, under [Federal] Rule [of Evidence] 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  *Id.*

 Rule 404(b) contains an important limitation.  "Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant."  *United States v.*

*Gonzalez-Sanchez*, 825 F.2d 572, 583 (1st Cir. 1987). This last limitation on Rule 404(b)'s scope means that Ms. Ford cannot invoke the Rule to exclude testimony about James F. Ford's relevant prior acts themselves as evidence of Ms. Ford's bad character or propensity. The Rule simply does not reach that far.

At the same time, Trooper Bruce's testimony is probative of Ms. Ford's own culpability for the events of 2004; it tends to show that she conspired with or aided and abetted James F. Ford's criminal conduct. To that extent, the proffered testimony requires a Rule 404(b) analysis because it is evidence of Darlene Ford's own prior criminal acts.

The Court concludes that evidence of the prior marijuana grow operation in the Fords' home in 2004 in Massachusetts has special relevance for Count One, the marijuana manufacturing conspiracy count, and for Count Three, the drug-involved premises count. This evidence of the events underlying the police search of the Fords' Massachusetts residence could be viewed by a jury as probative of Ms. Ford's knowledge of marijuana, its distinctive odor, and its growing requirements, the equipment and methods to successfully grow marijuana, her husband's interest in marijuana production, and other factors relevant to the Government's charges. This evidence also bears on Ms. Ford's intent and lack of mistake or accident. All of these are permissible purposes for admission under Rule 404(b).

Finally, the Court must also determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Virtually all evidence that the Government puts on against a criminal

defendant is "prejudicial" in some sense; if not, the prosecutor would be unlikely to present it. The concern that Rule 403 addresses is the risk of unfair prejudice; for example, the risk that the jury might be tempted to convict the defendant for reasons unrelated to evidence of the crimes charged in the indictment. It is true that there is some risk of unfair prejudice to Ms. Ford if the jury hears testimony of James F. Ford's prior criminal activities in Massachusetts. The jury might be tempted to convict Ms. Ford because in 2004 she was married to a lawbreaker. However, this slight risk of unfair prejudice is outweighed by the probative value of the evidence, particularly in light of the likely similar evidence of James F. Ford's marijuana grow operation in Monroe.

Moreover, there is some risk that a jury will view evidence of Ms. Ford's close association with a marijuana grow operation in Massachusetts to conclude that she is a person of bad character or a person with a propensity to commit crimes. Upon request of the Defendant, the Court will instruct the jury as to the limited purposes for which it may use this evidence in considering the drug charges and, in any event, that the members of the jury may not use this evidence as character evidence.

The Court DENIES Darlene Ford's Motion in Limine (ECF No. 301).

SO ORDERED.

/s/ John A. Woodcock, Jr.
 JOHN A. WOODCOCK, JR.
 CHIEF UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2014