UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00163-JAW |
| | ) | |
| DARLENE FORD | ) | |

**ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL**

On February 6, 2014, a federal jury convicted Darlene Ford of conspiracy to manufacture marijuana, knowingly maintaining a residence for the purpose of manufacturing marijuana, and aiding and abetting a felon in possession of a firearm. Ms. Ford renews in writing her oral motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), arguing that the evidence does not support a guilty verdict on any of the counts of conviction. In the alternate, Ms. Ford moves for a new trial under Criminal Rule 33. Concluding that the trial evidence was sufficient to support the convictions on all three counts and that the Court did not err in allowing Trooper James Bruce to testify about the circumstances leading up to Mr. Ford's 2004 Massachusetts felony conviction, the Court denies both motions.

**I.   LEGAL STANDARD**

In ruling on a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government and draw all reasonable inferences in the Government's favor. *United States v. Lara*, 181 F.3d 183, 200 (1st Cir. 1999); *United States v. Andrade*, 94 F.3d 9, 12 (1st Cir. 1996). The Court

should deny the motion if the evidence, viewed in this manner, is sufficient to permit a jury to find guilt beyond a reasonable doubt. *United States v. Doe*, 921 F.2d 340, 343 (1st Cir. 1990). However, the verdict may not "'rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.'" *United States v. Rojas Alvarez*, 451 F.3d 320, 333 (1st Cir. 2006) (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the [G]overnment's case, . . . or where there is a 'total failure of proof of [a] requisite element.'" *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (quoting *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009)) (internal citations omitted).

A motion for a new trial should be granted only where "'there would be a miscarriage of justice . . . and where the evidence preponderates heavily against the verdict.'" *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001) (quoting *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979)). However, absent evidence of a "manifest injustice," Criminal Rule 33 is not an appropriate "vehicle to relitigate evidentiary rulings with which [the defendant] disagrees." *United States v. Castro*, 669 F. Supp. 2d 288, 293 (E.D.N.Y. 2009), *aff'd on other grounds*, 411 Fed. App'x 415 (2d Cir. 2011) (unpublished).

## II. FACTS

### A. Procedural Posture

A grand jury indicted Ms. Ford on September 14, 2012, *Indictment* (ECF No. 1), and issued a superseding indictment on April 23, 2013. *Superseding Indictment*

2

(ECF No. 80). The superseding indictment charged Ms. Ford with conspiracy to manufacture marijuana (Count One), *id.* at 1; using and maintaining a premises for the purpose of manufacturing marijuana (Count Three), *id.* at 2; and aiding and abetting her husband James F. Ford, a felon, in possession of two specific firearms (Count Six). *Id.* at 4. The Government brought Ms. Ford to trial on these charges beginning on September 23, 2013, but on September 26, 2013, the Court declared a mistrial when the jury was unable to reach a verdict. *Oral Decl. of Mistrial* (ECF No. 208).

On November 27, 2013, the Court reset the case for trial to begin on February 4, 2014. *Order Granting Mot. to Continue* (ECF No. 256). On January 31, 2014, Ms. Ford filed a motion in limine to exclude the testimony of Massachusetts State Trooper James Bruce. *Def.'s Mot. in Limine* (ECF No. 301). The Court denied that motion on February 4, 2014, the first day of trial. *Order on Mot. in Limine* (ECF No. 310). On February 6, 2014, the jury convicted Ms. Ford on all counts. *Verdict Form* (ECF No. 318).

Ms. Ford filed the present motion for acquittal on February 18, 2014. *Mot. of Def. for J. of Acquittal or in the Alternative Mot. for New Trial* (ECF No. 327) (*Def.'s Mot.*). The Government responded in opposition on March 6, 2014. *Gov't's Objection and Resp. to Def.'s Mot. for J. of Acquittal* (ECF No. 329) (*Gov't's Opp'n*). Ms. Ford did not reply to the Government's opposition.

**B.  Evidence at Trial**

On November 15, 2011, agents and officers with the Maine Drug Enforcement Agency (MDEA) executed a search warrant at the home of Darlene

and James F. Ford, located at 360 Swan Lake Avenue in Monroe, Maine. The structure at this address is a large, barn-like metal building. The residential quarters are located in a partial second floor at the back of the structure. Darlene Ford, her husband James F. Ford, and their two sons, Paul and James T., were all in the residence at the time the agents executed the search warrant. All four exited the Ford home when called out by law enforcement officers, who entered the residence after securing the four Fords.

On the first floor of 360 Swan Lake Road, the agents discovered a sophisticated indoor marijuana manufacturing operation. Within the open garage area of the structure were either three or four enclosed inner structures containing dozens of live marijuana plants.[1] At least two of the grow rooms contained extensive environmental controls, including controls for temperature, lighting, and humidity. Another room was apparently a staging area to care for and process the plants. Agents found numerous items typically used in connection with the manufacture of marijuana strewn about the garage and secured on shelving units.

Agents also located two dismantled assault-style rifles in the garage, hidden in a compartment beneath a mattress outside the grow rooms. In addition, throughout the garage agents found component parts for other firearms. Count VI of the superseding indictment alleged that Ms. Ford had aided and abetted James

---

[1] The Court acknowledges some confusion as to whether there were three or four rooms in the downstairs part of the structure involved in the marijuana grow operation. Without a certified transcript and the demonstrative exhibits, it is difficult to piece together this part of the evidence. Whether there were three or four rooms, however, is immaterial to the resolution of the pending motion.

F. Ford's possession of two firearms: (1) a Sig Sauer Model 556, 5.56mm caliber rifle; and (2) a DSA Inc., Model SA 58, 308 caliber rifle. *Superseding Indictment* at 4. At trial, the Government presented evidence that Ms. Ford had purchased these two rifles.

Agents seized numerous other items of evidence, including a computer, digital camera, and several electronic storage devices. On these items, agents found still photos of James F. Ford and his two sons shooting the two firearms that had been seized in the garage. Agents also found a video clip of James F. Ford firing one of the rifles at a firing range with audio of Ms. Ford narrating as her husband fires the rifle. One photo showed Ms. Ford standing with Mr. Ford and two other people in the first floor of the warehouse, directly in front of one of the grow rooms. The agents also found an email from James F. Ford to Ms. Ford in which he discussed a number of matters that, viewed in a light most favorable to the Government, related to the marijuana grow operation.

Ms. Ford made statements to MDEA Special Agent Allen Weaver in compliance with the notice requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966). Agent Weaver recorded the interview. During the interview, Ms. Ford acknowledged that her husband had been growing marijuana at their home for several years.[2] She acknowledged that she took care of the family finances. When

---

[2] Ms. Ford argued at trial that this admission reflected knowledge that she had gained only earlier that night when, after the police arrived at the house, her son informed her of the manufacturing operation on the first floor of her house. However, in view of the jury verdicts, the Court is not required to accept Ms. Ford's version of her statement when ruling on her Rule 29 motion, and instead views her statements in a manner consistent with the verdicts.

5

confronted with her husband's statements concerning their involvement in growing and distributing marijuana, Ms. Ford acknowledged the accuracy of his statements.

Thousands of pages of bank records revealed that Ms. Ford was the only person to write checks on the multiple bank accounts that she and her husband owned together. For example, during approximately two years, she wrote over $25,000 in checks to the Central Maine Power Company (CMP) to pay the residential electricity bill for 360 Swan Lake Avenue. A representative of CMP testified that CMP's customer service records show no indication of any complaints or inquiries by Ms. Ford into the amount of her electricity bills. ATF financial investigator Michael Ballback testified that he analyzed the bank records and handwritten financial ledgers recovered during the execution of the search warrant, and that Ms. Ford maintained all of these financial documents. The bank records and financial ledgers showed that the Fords had made over $500,000 in just over two years, though neither of them had been lawfully employed. Mr. Ballback further confirmed that the cash deposits into these bank accounts corresponded with the marijuana "move" dates listed on the calendars found on the first floor of the Fords' home.[3]

Cassandra Spencer, the former girlfriend of James T. Ford, testified regarding her conversations with James T. In these conversations, she reported

---

[3]  The calendars presented at trial had abbreviations and code words, such as "H" and "M" at certain regular intervals and "Beantown" in the ledgers corresponding with large cash receipts. Viewing this evidence in a light most favorable to the Government, the Court concludes that the regular "H" indication stood for "harvest," the regular "M" indication stood for "move," and "Beantown" referred to Boston, Massachusetts.

that he explained how the "family business" was operated, and he discussed Ms. Ford's role as the financial manager of the operation.

Count VI of the superseding indictment alleged that James F. Ford, Ms. Ford's husband, had previously been convicted of a felony, namely a 2004 Massachusetts conviction for possession of marijuana with the intent to manufacture, distribute, dispense or cultivate. *Superseding Indictment* at 4. Trooper Bruce testified concerning the events surrounding Mr. Ford's arrest in 2002 and his subsequent conviction in 2004 for state felony marijuana cultivation with intent to distribute. Trooper Bruce testified that the Fords owned two homes in Massachusetts across the street from each other and that these homes contained extensive marijuana grow operations. One of the homes occupied by the Fords had a room containing multiple marijuana plants near the Fords' bedroom. Trooper Bruce testified to the overwhelming odor of marijuana throughout both houses. He also testified that Ms. Ford was initially present when the search warrant was being executed at one of the homes. He further testified that one of the homes in Massachusetts was civilly forfeited to the Commonwealth of Massachusetts in connection with James F. Ford's felony conviction.

Ms. Ford took the stand in her own defense. She testified that she did not know until the day of the search warrant execution that her husband and sons were growing marijuana in the first floor of her home at 360 Swan Lake Avenue. She also testified that she did not know that her husband was growing marijuana at their homes in Massachusetts. She further testified that she did not know her

7

husband was a convicted felon. She admitted that she regularly looked down from the partial second floor into the warehouse to notify Mr. Ford of phone calls or to call him to dinner.

### III. DISCUSSION

#### A. Position of the Parties

Ms. Ford initially frames her legal theory of relief under Rules 29 and 33 as sufficiency of the evidence. *Def.'s Mot.* at 1. However, her argument focuses entirely on the Court's decision to admit the testimony of Trooper Bruce. *Id.* at 3-5. She argues that this admission was improper under Federal Rule of Evidence 404(b) because it is not relevant to any act by Ms. Ford, was not offered for a proper purpose, and was unduly prejudicial to Ms. Ford. *Id.* The Government responds by incorporating its previous arguments against the motion in limine. *Gov't's Opp'n* at 5.

#### B. Count One: Conspiracy to Manufacture Marijuana

To prove the conspiracy alleged in Count One, the Government was required to prove beyond a reasonable doubt that (1) the agreement to manufacture marijuana plants specified in the indictment existed between at least two people, and (2) Darlene Ford wilfully joined in that agreement. 21 U.S.C. § 846; *United States v. Piper*, 35 F.3d 611, 614-15 (1st Cir. 1994). The crime underlying the conspiracy, manufacturing marijuana, required the Government to prove that one or more conspirators (1) manufactured marijuana; (2) knew that the substance they were manufacturing was marijuana; and (3) acted knowingly or intentionally. 21 U.S.C. § 841(a)(1).

The Government's evidence robustly supports the existence of a conspiracy to commit the underlying crimes. The Government found at least two concealed grow rooms full of marijuana plants on the first floor of the warehouse where Darlene and James F. Ford lived, including an extensive atmosphere control system, and an additional room for processing. There were many tools and materials related to hydroponic growing in the area around the enclosed grow rooms. The emails among Mr. Ford, his sons, and Ms. Ford showed thinly disguised conversations regarding their roles in the manufacturing operation.

There was also sufficient evidence that Ms. Ford knew of the operation and wilfully joined in the conspiracy. She lived directly above the operation; she was photographed with Mr. Ford on the first floor of the warehouse, outside one of the enclosed grow rooms; her handwriting was found on the ledgers documenting movement of the harvested marijuana and receipt of large cash sums. She was the only one in the family who dealt with bank accounts, and was responsible for depositing the large cash sums into those bank accounts. Mr. Ford was unemployed during the time that the family received over $500,000 in income, and the jury could reasonably have rejected Ms. Ford's explanation that she thought Mr. Ford was still employed as an independent contractor working from his workshop in the warehouse. The exceptionally large electricity bills that Ms. Ford paid to CMP, without comment or complaint, provide further circumstantial evidence that she knew of the operation. In short, there was plenty of evidence on which to conclude that Ms. Ford joined the conspiracy and served as its financial manager.

### C. Count Three: Maintaining a Residence for the Purpose of Manufacturing Marijuana

To obtain a conviction on Count Three, the Government was required to prove that (1) Ms. Ford knowingly used or maintained the residence at 360 Swan Lake Avenue, and (2) did so for the purpose of intentionally manufacturing marijuana plants. 21 U.S.C. § 856(a)(1). Because the superseding indictment charged aiding and abetting in the alternate, the Government could also obtain a conviction by proving that (1) someone else committed the principal crime, and (2) Ms. Ford consciously shared the other person's knowledge of the crime, intended to help him, and that she took part in the endeavor, seeking to make it succeed. 18 U.S.C. § 2; *United States v. Spinney*, 65 F.3d 231, 234-35 (1st Cir. 1995). The Government was permitted to prove that Ms. Ford acted "knowingly" by proving that she deliberately closed her eyes to a fact that otherwise would have been obvious to her. *United States v. Gabriele*, 63 F.3d 61, 66-67 & n.6 (1st Cir. 1995); *United States v. Brandon*, 17 F.3d 409, 451-52 & n.72 (1st Cir. 1994).

The evidence at trial showed that Ms. Ford lived in and maintained at least the second floor of the warehouse. The same evidence that was sufficient for a jury to convict her of conspiracy to manufacture marijuana was also sufficient to find that she used and maintained the whole warehouse for the purpose of manufacturing marijuana. *See* Section III.B, *supra*.

### D. Count Six: Aiding and Abetting a Felon in Possession of a Firearm

To convict Ms. Ford of aiding and abetting a felon in possession of a firearm, the Government was required to prove that (1) James F. Ford was convicted in any

10

court of a crime punishable by imprisonment for a term exceeding one year; (2) James F. Ford knowingly possessed one or both of the firearms described in the indictment; (3) the possessed firearm was connected with interstate commerce; (4) Ms. Ford had reason to know that James F. Ford had been convicted of the felony; and (5) Ms. Ford consciously shared James F. Ford's knowledge that he possessed one or both of the firearms, intended to help him possess it, and took part in the endeavor, seeking to make it succeed. 18 U.S.C. § 2; *Spinney*, 65 F.3d at 234-35; *United States v. Bartelho*, 71 F.3d 436, 439 (1st Cir. 1995).

Abundant evidence supported all of these elements. The parties agreed to a jury instruction that James F. Ford's Massachusetts marijuana conviction was a felony within the meaning of the first element. They also stipulated that the firearms specified in the indictment moved in interstate commerce. The evidence showed that Ms. Ford purchased both firearms, and there was video evidence of James F. Ford shooting one of the firearms with Ms. Ford narrating. The jury could readily have concluded from this evidence that Ms. Ford intentionally helped James F. Ford to possess the firearm.

Ms. Ford testified to the jury that she did not know that Mr. Ford was a felon, but the jury could reasonably have rejected that claim. Based on Trooper Bruce's testimony, the jury could have reasonably found that Ms. Ford was living in a house in Massachusetts in which James F. Ford, her husband, was growing marijuana. In fact, Trooper Bruce testified that the entire house reeked of marijuana. She was present when Trooper Bruce and his associates executed the

11

search warrant at the Fords' Massachusetts homes, and Mr. Ford was ultimately convicted of a felony crime. The commonwealth of Massachusetts seized one of the two houses in a civil forfeiture proceeding connected to that conviction.

It is possible that Ms. Ford, as James F. Ford's wife, was unaware that her husband had been convicted of a felony. This is what Ms. Ford herself insisted under oath when she testified. However, the jury could reasonably have rejected her testimony as implausible. After all, during 2002 to 2004, Mr. and Ms. Ford were living together as husband and wife; they were living in the same Massachusetts residence that was being used to grow marijuana and reeked of the distinct smell of marijuana; there was a marijuana grow operation across the street in a house that the Fords owned; the state police had come to search the homes; her husband was later charged and convicted of a marijuana felony; and the Fords lost one of the houses through civil forfeiture to the commonwealth of Massachusetts. These cumulated facts would not necessarily compel a finding of knowledge on the part of Ms. Ford of her husband's prohibited status, but—taken together—they go far beyond "mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *Rojas Alvarez*, 451 F.3d at 333 (internal quotations omitted). In other words, although the inference of knowledge was not the only possible conclusion, it was a permissible conclusion.

Ms. Ford takes issue with the Court's decision to permit Trooper Bruce to testify as to the events in Massachusetts, but that effort is an attempt to relitigate the motion in limine. The Court's order denying that motion is the law of the case,

and Ms. Ford has given the Court no grounds to reverse its previous decision. *Order on Mot. in Limine* (ECF No. 310). In short summary, the events in Massachusetts were relevant to Ms. Ford's knowledge of James F. Ford's status as a felon and to her knowledge of how to grow marijuana; were offered for the proper purpose of proving an element of one of the charged crimes; and were not unfairly prejudicial. *See id.* at 5-9. The Court gave the jury a limiting instruction that they were to consider the evidence of James F. Ford's crimes only with respect to Ms. Ford's knowledge, and forbade the jury from considering them as evidence of Ms. Ford's bad character. Under these circumstances, the Court does not agree with Ms. Ford that the admission of Trooper Bruce's testimony worked a manifest injustice that requires a new trial.

## IV. CONCLUSION

The Government presented trial evidence sufficient for the jury to convict Ms. Ford on all three counts, and the Court stands by its decision to allow Trooper Bruce to testify regarding the events in Massachusetts. The Court DENIES the Motion of Defendant, Darlene Ford, for Judgment of Acquittal or in the Alternative Motion for New Trial (ECF No. 327).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2014